## Lancaster County Commissioners' Petition.

*Turnpikes — Condemnation, of — Liability of county and townships for maintenance—Acts of April 25, 1907, and May 11, 1921.*

1. While, under the Act of April 25, 1907, P. L. 104, a condemned turnpike becomes a county road, the Act of May 11, 1921, P. L. 477, gives the court power on petition of the county commissioners to vacate all or part of it as a county road and make it into township roads.

2. The custom in Lancaster County to declare condemned turnpikes and those purchased by the county to be township roads should be followed in this case, as the county has no general system for maintaining roads, though its practice is to contribute aid toward the maintenance of roads by the townships, in proper cases.

Petition to vacate the Strasburg and Millport Turnpike Road. Q. S. Lancaster Co., Sept. Sess., 1923, Minute 135.

*J. Andrew Frantz*, County Solicitor, for petition.

*H. Edgar Sherts* and *John A. Coyle*, contra.

LANDIS, P. J., June 21, 1924.—The Strasburg and Millport Road was incorporated under the Act of April 18, 1853, P. L. 530, as amended by the Act of March 23, 1859, P. L. 210, supplemented by the Act of March 8, 1860, P. L. 129, and it was constructed by the Strasburg and Millport Turnpike Road Company and was operated by that company for many years. On Sept. 10, 1923, a petition was presented to this court by a number of resident taxpayers of the County of Lancaster, asking for a jury of view, as provided by law, to view and condemn the said turnpike road and to assess the damages to which the owners should be entitled by reason thereof. In accordance with this petition, the court appointed a master and also viewers, and a hearing having been duly had, a report was presented and confirmed *nisi* on Nov. 19,

1923, whereby it was determined that it was for the best interests of the people of the county that the said turnpike road should be made free from tolls and toll-gates. They, therefore, found in favor of condemnation, and assessed the damages at $5000. This report was absolutely confirmed on Dec. 19, 1923.

Under the Act of April 25, 1907, P. L. 104, it was provided that it should be the duty of the county to repair and maintain a turnpike which had been thus condemned for public use, and that is the situation after this condemnation. See East White Land Township v. Chester County, 235 Pa. 579. But the Act of May 11, 1921, P. L. 477, declares that "upon the petition of the county commissioners of any county, the several Courts of Quarter Sessions of this Commonwealth shall have power within their respective counties to vacate as a county road any portion or portions of any abandoned or condemned turnpike road, . . . and all portions of such roads so vacated shall become and be township roads." The Commissioners of Lancaster County, therefore, presented under this act their petition, praying that this road should be vacated as a county road, and an examiner was appointed to take testimony and report to us the expediency of making such an order. The testimony as taken is before us.

The proceedings are in regular form, and the counsel for the parties in interest have argued what they consider are the points involved. We find that all the conditions prescribed by the Act of 1921 have been complied with, and under this situation the question arises whether an order ought to be made vacating this road as a county road. It seems to us that in the testimony taken before the examiner the parties have wandered far afield, and we will endeavor to confine our discussion simply to this point.

The turnpike road runs a distance of 24,815 feet from what is now called the Lincoln Highway, through three townships, to the Borough of Strasburg. It runs in sequence through East Lampeter Township, a distance of about 1¾ miles; through West Lampeter Township, a distance of about 1 8-10 miles, and through Strasburg Township, a distance of about 1½ miles. It is conceded that the road is not now in good repair, but how it shall be repaired would seem to us to be solely a question for the township supervisors in case the road is vacated. That question cannot be determined by us. It is admitted that there are no roads in this county maintained by the county. There never were any roads but one ever maintained by it. The road referred to was in that condition for two or three years, but it was then through the action of the grand jury made a township road. There have been six condemnation proceedings in which the turnpikes have been condemned, but in all of them the townships through which these roads pass were made liable for their maintenance. In nine townships and in one borough through which turnpikes passed, the county purchased the roads and made them free, but entered into agreements with the townships and borough, whereby the latter undertook to forever keep them in repair. At no time did the county agree to contribute towards the repair of such turnpikes in consideration of such agreements being entered into. On many occasions, however, the county did contribute aid towards the general maintenance of roads in the several townships. Every adverse proceeding for placing the maintenance of condemned turnpikes upon the townships in which they lay has resulted in their being declared township roads.

The county has never pursued the plan of maintaining the roads. It has neither organization nor implements for such purposes. It helps the town-

ships which have such organizations, and with the latter lies the responsibility. It is true that the Act of 1921 declares that the court may "make such order in the premises as to right and justice shall appertain," but we have no means of knowing what repairs shall be considered necessary by the township supervisors when they come to do the work, or what would, under the circumstances, be a proper allowance for the making of the repairs. Estimates by engineers upon the subject have little value. It would, in the absence of a general established system for the maintenance of all roads by the county, be grossly unfair to impose upon the county the duty of maintaining some of the roads, especially in townships where the assessed valuation is high and tax rate for road purposes not excessive, while leaving all the other townships with the burden of keeping up all their roads. This is particularly so when it is considered that but few turnpikes in the county remain as toll roads.

In the first place, in our opinion, a decree should be entered vacating this road as a county road, so that the same may hereafter be a township road, and after such vacation and after the necessary repairs have been made to the road in accordance with the views of the township supervisor, the county commissioners should be asked to give such aid as in their discretion should seem fit. The bridges are county bridges, and are to be maintained by the county.

We, therefore, do now enter a decree vacating the said road as a county road, to the end that it shall become hereafter a township road.

Decree vacating road as a county road entered.

From George Ross Eshleman, Lancaster, Pa.